```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3   UNITED STATES OF AMERICA,        )  Docket No. 15 CR 75
                                      )
 4                   Plaintiff,       )  Chicago, Illinois
                                      )  November 9, 2016
 5              v.                    )  2:02 p.m.
                                      )
 6   NAVINDER SINGH SARAO,            )
                                      )
 7                   Defendant.       )


 8                     TRANSCRIPT OF PROCEEDINGS
 9            BEFORE THE HONORABLE VIRGINIA M. KENDALL


10
     APPEARANCES:
11
     For the Government:      U.S. DEPARTMENT OF JUSTICE
12                            CRIMINAL DIVISION - FRAUD SECTION
                              MR. MICHAEL THOMAS O'NEILL
13                            MR. ROBERT AUGUSTINE ZINK
                              1400 New York Avenue
14                            Washington, DC  20007

15   For the Defendant:       KOBRE & KIM LLP by
                              MR. ROGER ANSON BURLINGAME
16                            800 Third Avenue, 6th Floor
                              New York, New York  10022
17
                              ARNSTEIN & LEHR LLP by
18                            MS. NANCY L. DePODESTA
                              120 South Riverside Plaza, Suite 1200
19                            Chicago, Illinois  60606

20

21

22   Court Reporter:          GAYLE A. McGUIGAN, CSR, RMR, CRR
                              Federal Official Court Reporter
23                            219 South Dearborn, Room 2318-A
                              Chicago, Illinois 60604
24                            (312) 435-6047
                              Gayle_McGuigan@ilnd.uscourts.gov
25
```

```
 1          (Proceedings heard in open court:)
 2              THE CLERK:  Case number 15 CR 75, Defendant 1,
 3     U.S. versus Navinder Sarao.  Sarao.
 4          (Defendant enters courtroom.)
 5              MR. O'NEILL:  Good afternoon, your Honor.
 6              Michael O'Neill, Robert Zink, and Special Agents
 7     Gregory LaBerta and Adam Nevens on behalf of the United States.
 8              THE COURT:  Good afternoon.
 9              Good afternoon.
10              Good afternoon.
11              MR. BURLINGAME:  Good afternoon, your Honor.
12              Roger Burlingame and Nancy DePodesta on behalf of
13     Navinder Sarao.
14              THE COURT:  Good afternoon.
15              MS. DePODESTA:  Good afternoon.
16              THE COURT:  Good afternoon.
17              Good afternoon, Mr. Sarao.
18              THE DEFENDANT:  (Nods affirmatively.)
19              THE COURT:  We're here for arraignment.  So my
20     question for Mr. Sarao is whether he received a copy of the
21     indictment and whether he would like a formal reading of it and
22     then what his plea will be to the indictment.
23              MR. BURLINGAME:  We waive the formal reading, and
24     we're intending to enter a plea of guilty today.
25              THE COURT:  Okay.  Well, then before we get into that,
```

1    make sure we have the maximum penalties in a proposed plea.

2            I just received this, so I haven't had a chance to go

3    through it with great detail because I was in other

4    sentencings, but we can do that at this point.

5            Let me just see what I have here.  Hang on.

6            So the maximum penalties would be in there, as well as

7    any waiver, so we'll just go straight into the change of plea

8    then.  Okay?

9            MR. O'NEILL:  Thank you, your Honor.

10           THE COURT:  All right.  So, Mr. Sarao, it's my

11   understanding that you intend to plead today guilty to the

12   charge that has been pressed against you, and we'll go through

13   exactly which charge.

14           But in order to do so, I first need to make a

15   determination about your competency to plead, and so I'm going

16   to ask you some questions about your mental health, about your

17   physical health, about your education, to make sure that I can

18   make that factual determination that you're competent.

19           Then I want to make sure that you understand the

20   maximum penalties for the crimes that you would be pleading

21   guilty to.

22           And then I want to make sure you understand all of the

23   trial rights that you would be waiving if you plead guilty.

24           Then, of course, I need to make sure that there is, in

25   fact, a factual basis that is a guilty plea, and so then we'll

```
 1    go through the facts from the government.

 2              So that's how we'll proceed.

 3              And if you would please place Mr. Sarao under oath.

 4              THE CLERK:  Please raise your right hand.

 5         (Defendant sworn.)

 6              THE COURT:  Okay.  Mr. Sarao, how old are you, sir?

 7              THE DEFENDANT:  37.

 8              THE COURT:  Why don't you switch places with

 9    Mr. Burlingame.  Or Mr. Burlingame, scoot further that way,

10    either way, so he's right in front of the microphone.

11         (Counsel complies.)

12              THE COURT:  Thank you.

13              Tell me again, please.

14              THE DEFENDANT:  37, your Honor.

15              THE COURT:  What is your highest level of education?

16              THE DEFENDANT:  University -- university degree.

17              THE COURT:  Okay.  Over in London?

18              THE DEFENDANT:  Yeah, that's -- yeah, correct.

19              THE COURT:  What is your degree in?

20              THE DEFENDANT:  Mathematics with computer science,

21    your Honor.

22              THE COURT:  Okay.  And have you ever been treated for

23    a mental health condition?

24              MR. BURLINGAME:  Your Honor, the -- my client has been

25    examined by a psych -- I'm not sure if it's a psychol -- but,
```

1    anyway, by a doctor in England and has severe Asperger's, but I

2    don't believe he's ever received any treatment for it.

3              THE COURT:  Okay.  Is there any other treatment or

4    mental health condition in your background?

5              THE DEFENDANT:  No, your Honor.

6              THE COURT:  Okay.  Other than the Asperger's.

7              Okay.  Have you ever been treated for a serious

8    medical condition?

9              THE DEFENDANT:  No, your Honor.

10             THE COURT:  Are you on any medications today?

11             THE DEFENDANT:  No, your Honor.

12             THE COURT:  Have you had any alcohol in the last 24

13   hours?

14             THE DEFENDANT:  No, your Honor.

15             THE COURT:  Have you had any drugs in the last 24

16   hours?

17             THE DEFENDANT:  No, your Honor.

18             THE COURT:  Okay.  There is an indictment here which

19   is -- it was filed in September, returned in September of last

20   year, and it's 28 pages long.

21             Have you had a chance to review this indictment with

22   your attorney, Mr. Burlingame or Ms. DePodesta?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  And when you reviewed the indictment, did

25   you ask questions of your attorneys?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  And did they answer those questions for

3     you?

4          THE DEFENDANT:  Yes, they did, your Honor.

5          THE COURT:  Okay.  I also have here a 34-page plea

6     agreement that is proposed.

7          Have you had a chance to review this plea agreement

8     with your attorneys?

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  And when you reviewed the plea agreement,

11    did you talk to your attorneys regarding the federal sentencing

12    guidelines and how they might impact your sentence?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  Did you also talk with your attorneys

15    about the maximum penalties for each of the charges in the

16    indictment?

17         THE DEFENDANT:  Yes, your Honor.

18         THE COURT:  Okay.  During the time that you were

19    talking with them about the penalties and the sentencing

20    guidelines, did you ask them questions?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  And did they answer those questions?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  Okay.  Do you feel that you've had enough

25    time to talk with your attorneys about both this charging

1    indictment as well as this proposed plea agreement?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Okay.  Is there any reason, Mr. Burlingame

4    or Ms. DePodesta, that you would question his competency?

5              MR. BURLINGAME:  No, your Honor.

6              THE COURT:  Any reason from the government?

7              MR. O'NEILL:  No, your Honor.

8              THE COURT:  Okay.  Based upon your answers to my

9    questions, your demeanor, and the fact that you've had

10   competent counsel to work through these two documents with you,

11   I do find that you're competent to enter into the plea, so now

12   I need to go through the plea agreement and make sure you

13   understand each of the issues that I mentioned to you a moment

14   ago.

15             You have been charged in this indictment with one

16   count of wire fraud in violation of Title 18, United States

17   Code 1343.

18             You've also been charged with ten counts of

19   commodities fraud in violation of Title 18, Section 1348, and

20   10 counts of commodity price manipulation in violation of

21   Title 7, United States Code, Section 13(a)(2), and then one

22   count of spoofing in violation of Title 7, United States Code,

23   Section 6c(a)(5)(C) and 13(a)(2).

24             Now, this particular plea agreement has you entering a

25   voluntary plea of guilty to Count 1 of the indictment, which is

1    the wire fraud charge, and that's the 18 U.S.C. 1343 charge;

2    also to Count 22 of the indictment, which is the spoofing

3    charge, the Title 7 violation.

4            Is that your understanding?

5            THE DEFENDANT:  Yes, that's correct, your Honor.

6            THE COURT:  Okay.  So those two particular charges

7    have maximum penalties that I will review with you, and they

8    are set forth in your plea agreement on page 14.

9            The maximum sentence for the wire fraud charge is 30

10   years imprisonment -- oh, excuse me, that's the collective.

11   The maximum period of imprisonment for the wire fraud is 20

12   years' imprisonment, and the maximum sentence for the spoofing

13   is 10 years' imprisonment.  That means collectively there's a

14   maximum term of imprisonment of 30 years.

15           Do you understand also that aside from that maximum

16   term that there is also a period of supervised release of not

17   more than three years for each of those two offenses?

18           THE DEFENDANT:  Yes, I do, your Honor.

19           THE COURT:  And do you understand that those are the

20   two maximum penalties that you would receive for each of those

21   counts?

22           THE DEFENDANT:  Yes, your Honor.

23           THE COURT:  Okay.  Now, there's also a criminal fine

24   for Count 1 for wire fraud of $250,000 or twice the gross gain

25   or the gross loss that resulted from the offense, whichever one

1    is greater.  That's for the wire fraud count.  And for the

2    spoofing, there's a $1 million fine or twice the gross gain or

3    loss resulting from the offense, whichever one is greater.

4           Do you understand that's also the maximum fine that

5    you could be charged with or given at the time of sentencing?

6           THE DEFENDANT:  Yes, your Honor.

7           THE COURT:  Okay.  Now, according to the United States

8    Code, Section 3663A, I must order restitution for any person

9    who is directly and proximately harmed as a result of the wire

10   fraud, and that amount will be determined by the Court.

11          There's -- do you understand that, that there is a

12   restitution that's mandatory?

13          THE DEFENDANT:  Yes, I do, your Honor.

14          THE COURT:  Okay.  There's also a forfeiture

15   allegation in the indictment.  And by pleading today, there

16   would be a forfeiture of property in the amount of

17   $12,871,587.26, and it's part of the sentence that would be

18   imposed on the case pursuant to Title 18, which is now we're

19   looking at the forfeiture section, 981, and Title 28, which is

20   2461.

21          Do you understand that that is the amount of forfeited

22   property, that's the maximum amount of the forfeiture count?

23          THE DEFENDANT:  Yes, I do, your Honor.

24          THE COURT:  Okay.  Now, in accord with Section 3013 of

25   the U.S. Code, you have a special assessment on each count.

1    You're pleading to two, so you have $100 on each count, it's

2    $200.  And that's in addition to any fine, penalty,

3    restitution.

4              Do you understand that?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  All right.  Now, that's all maximum

7    penalties under the statutes.

8              Now, there's a difference between that and the federal

9    sentencing guidelines.

10             The federal sentencing guidelines are not mandatory;

11   but when I sentence you, I must make a calculation of them, and

12   they become a starting point for a discussion of what an

13   appropriate sentence would be.

14             Do you understand that?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  Okay.  The sentencing guideline manual

17   that is in effect at the time of this charge or sentencing

18   would be the November 2016 guideline manual.

19             Is that your understanding?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  All right.  Let's talk about those

22   sentencing guidelines.

23             So Count 1 and Count 22, so the wire fraud and the

24   spoofing, are grouped together into a single group because

25   they're considered closely related counts, so the offense level

1    applicable to the group is the offense level for Count 1, the

2    wire fraud, and the guideline for that is 3D1.3.  So the base

3    offense is 7 for the wire fraud.  And pursuant to guideline

4    2B1.1(b)(1)(K), the offense level is increased by 20 levels.

5    And that's because the gain that resulted from this offense,

6    which the Court may use as an alternative means of loss in this

7    case, exceeds $9 1/2 million but is less than 25 million.  The

8    defendant's unlawful gain in the case is at least 12,871

9    $587.26, so we start with a base --

10            MR. O'NEILL:  Pardon me, your Honor.  I'm sorry to

11   interrupt.  $12.8 million.

12            THE COURT:  What did I say?

13            MR. O'NEILL:  Just for the record.  I believe you said

14   thousand.

15            THE COURT:  Oh, I'm sorry, yeah, that would be

16   million.

17            So we start with a base offense level of 7.  We're

18   going up 20 levels for this loss amount between 9 1/2 million

19   and 25 million, and that is a measure of loss.

20            Then the offense is increased again by 2 levels

21   because the offense involved 10 or more victims.

22            The offense is then increased again because a

23   substantial part of the scheme was committed from outside of

24   the United States.

25            And the offense involved sophisticated means in that

1    you intentionally engaged in and caused the conduct

2    constituting the sophisticated means.

3         And then there's a reduction of levels.  And that's

4    for acceptance of responsibility.  And if the government

5    continues to believe that you've accepted responsibility up to

6    and including at the time of sentencing, then a 2-level

7    reduction would be requested, and then another 1 level for

8    entering into a timely plea.  You can't get much more timely

9    than pleading at your arraignment.  So that would be a 3-level

10   decrease.

11        So what that means is that we place that calculation

12   up against a calculation of your criminal history, which is a

13   criminal history category I.  There is no criminal history.

14        And so it would equate to an anticipated guideline

15   range, which is advisory, of between 78 and 97 months'

16   imprisonment, and that is also with the period of supervised

17   release of up to 3 years on each count, the fine that I

18   mentioned earlier, the forfeiture of the 12.8 million, and the

19   restitution that I may impose.

20        Do you understand that that is an anticipated advisory

21   range?

22        THE DEFENDANT:  Yes, I do, your Honor.

23        THE COURT:  Okay.  Now, these are preliminary

24   calculations.  They're calculations that have been made before

25   the benefit of a probation officer's report and recommendation

1    in the form of a very thorough sentencing report and,

2    therefore, they may change.  The sentencing -- I mean, the

3    probation officer may choose to select guidelines that are

4    higher than these guidelines or she or he may choose guidelines

5    that are lower.  The thing that you need to understand is that

6    as long as I sentence you below the maximum penalty, then you

7    cannot withdraw this guilty plea.

8            Do you understand that?

9            THE DEFENDANT:  Yes, your Honor.

10           THE COURT:  Okay.  And also if those guidelines

11   change, if they are higher or lower or different from what the

12   parties here today have set forth in this plea agreement, that

13   also does not allow you -- that is not a basis for withdrawing

14   your guilty plea.

15           Do you understand that?

16           THE DEFENDANT:  Yes, your Honor.

17           THE COURT:  Okay.  Now, this particular plea agreement

18   also states that you will truthfully and fully cooperate in any

19   manner in which you are called upon to cooperate by a

20   representative of the Department of Justice's Fraud Section,

21   and this includes providing complete and truthful information

22   in any investigation and pretrial preparation and complete and

23   truthful testimony in any criminal, civil, or administrative

24   proceeding, and you're also agreeing to postpone your

25   sentencing until after that cooperation is concluded.  You also

1    are agreeing to make yourself available within seven calendar

2    days on any request by the Fraud Section.

3              Is that your understanding?

4              THE DEFENDANT:  That's correct, your Honor.

5              THE COURT:  So at the time of sentencing then, the

6    government intends to make known to me the extent of your

7    cooperation; and if they determine -- if the government

8    determines that that cooperation has been full and truthful, as

9    required by this agreement, then they are going to move me for

10   a departure from that guideline calculation pursuant to

11   guideline 5K1.  That means they'll move to depart lower than

12   that guideline calculation.  And they will be free to recommend

13   any sentence that -- they will move for that calculation, and

14   then your attorneys will be free to recommend any sentence that

15   your attorneys believe is appropriate to me.

16             Is that your understanding of how this will play out?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  Okay.  Now, if the government does not

19   move, however, for that departure from the guideline range,

20   then this agreement will not be -- will not be operative.  Both

21   parties will then be able to recommend any sentence within the

22   applicable range as set forth in paragraph 11, and it's not

23   going to prejudice your ability to recommend a downward

24   variance from the agreed-upon guideline range.  And then once

25   that guideline calculation again is created, it's advisory, and

1    then we turn to the factors under 3553 that I must assess, and

2    then I will sentence you according to those factors.

3              Is that your understanding?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  So if the government does not move for

6    that downward departure based upon cooperation, you're not

7    permitted to withdraw your guilty plea based upon this

8    paragraph.

9              Do you understand that?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  Okay.  It just shifts the focus from the

12   guidelines to whatever sentence each side deems is appropriate.

13             That's your understanding?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  Okay.

16             MR. O'NEILL:  Pardon me, your Honor, if I may, just a

17   point of clarification for the record.

18             THE COURT:  Yes.

19             MR. O'NEILL:  Under paragraph 14 of the agreement, it

20   is still within the guidelines range set forth in paragraph 11

21   as stipulated to by the parties.

22             THE COURT:  Right.  I think that I stated that

23   earlier -- oh, I see, any sentence recommended by each side

24   within the guideline range as set forth in paragraph 11.

25             MR. O'NEILL:  Thank you, your Honor.

1          THE COURT:  That's correct, yes.

2          Now, I'm not a party to this plea agreement.  This is

3    a plea agreement between you and the United States Fraud

4    Section.

5          Do you understand that?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  So, regardless, I can impose a sentence up

8    to the maximum penalties that were just mentioned.

9          Do you understand that?

10         THE DEFENDANT:  Yes, your Honor.

11         THE COURT:  Okay.  Now, you have that $200 special

12   assessment that you'll need to pay at the time of sentencing

13   with a check or money order payable to the Clerk of the Court.

14         Do you understand that?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  And then you'll have that order of

17   restitution, and that order of restitution is for the full

18   amount of the victims' losses as I will determine.

19         So I assume there will be presentation of evidence

20   regarding that at sentencing?

21         MR. O'NEILL:  Your Honor, pursuant to the agreement,

22   and if I may, the parties acknowledge that based on the

23   information currently available to the government,

24   determining -- let me begin, the parties agree that restitution

25   is mandatory under 3663A.  But based on information currently

1    available to the government, there are complex issues -- there

2    may be complex issues of fact relating to the amount of the

3    victims' losses in this case such that it would complicate or

4    prolong the sentencing process or that determining the number

5    of identifiable victims would be impracticable, so under -- the

6    parties agree that under 3664(d)(v), the Court may defer the

7    imposition of restitution until, if any, until after the

8    sentencing, and the defendant is specifically waiving under the

9    agreement the 90-day provision found at that part of the

10    statute at (d)(v).

11            THE COURT:  Okay.  So I think the key factors from

12    this paragraph to understand is that restitution is mandatory,

13    but there are times that the statute provides when it cannot be

14    determined in a specific way and then I can, for example,

15    accept an agreement as here where the imposition of the

16    restitution is done later after the sentencing.

17            Do you understand that?

18            THE DEFENDANT:  Yes, your Honor.

19            THE COURT:  Okay.  You are required to notify the

20    Court and the Fraud Section, however, of any material change in

21    economic circumstances that might affect your ability to pay

22    this restitution, though.

23            Do you understand that?

24            THE DEFENDANT:  Yes, your Honor.

25            THE COURT:  Okay.  All right.  So let's turn now to

1   page 22 of the plea, because pursuant to the forfeiture

2   section, you are agreeing to forfeit to the United States

3   voluntarily and immediately any and all right, title, and

4   interests in any property, real or personal, which constitutes

5   or is derived from proceeds directly and indirectly traceable

6   to the wire fraud.  And that's the Count 1 that you're pleading

7   to.

8           So this is -- this is including, but not limited to, a

9   money judgment in favor of the United States for the sum of

10  $12,871,587.26.  That is, according to the parties, the value

11  of the property that you obtained from the wire fraud in Count

12  1 that is traceable.

13          Do you understand that you will be forfeiting that

14  money judgment?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  Now, personal property, you are agreeing

17  that all funds and monies contained in the bank account in the

18  name of Kobre & Kim LLP IOLA account at HSBC Bank in the

19  United States, with account number ending in 0009, to be

20  credited against that money judgment; and that all bank

21  accounts, brokerage accounts, investments, trusts, or financial

22  interests of any kind, wherever located, in the name of

23  Navinder Singh Sarao, Nav Sarao Futures Limited, in which

24  Navinder Singh Sarao -- I hope I'm saying this correctly -- has

25  signatory authority, or over which you exercise any degree of

1  control, and you are agreeing to assist the United States in

2  locating those bank accounts, those brokerage accounts,

3  investments, trusts, or financial interests of any kind,

4  including the funds and monies contained in or previously

5  restrained from bank accounts located overseas, and you are

6  agreeing to assist the United States in personally repatriating

7  these funds to the United States to the extent of your right,

8  title, and interest in those accounts up to that amount of

9  $12,871,587.26, which would then be credited against that money

10  judgment.

11            That's your understanding?

12            THE DEFENDANT:  Yes, it is, your Honor.

13            THE COURT:  Okay.  Now, as far as substitute assets

14  are concerned, the proceeds that are considered directly or

15  indirectly traceable to the wire fraud include substitute

16  assets, the first being any and all membership, right, title,

17  or interest you had or have in the seat on the Chicago

18  Mercantile Exchange that was held by you or any entity over

19  which you exercised any degree of control; and any other

20  property owned by you up to that value that I keep mentioning

21  of $12.8 million odd, whether real or personal, if the

22  property, as a result of any act or omission of the defendant,

23  cannot be located upon the exercise of due diligence, has been

24  transferred or sold, or deposited with a third party, has been

25  placed beyond the jurisdiction of the court, has been

1    substantially diminished in value, or has been commingled with

2    other property which cannot be divided without difficulty,

3    pursuant to the various statute provisions set forth on page

4    24.

5            Is that your understanding regarding the forfeitable

6    property and the substitute assets?

7            THE DEFENDANT:  Yes, it is, your Honor.

8            THE COURT:  Okay.  You're agreeing that all of that

9    property that I just defined is subject to forfeiture.

10           Do you understand that?

11           THE DEFENDANT:  Yes, your Honor.

12           THE COURT:  And when you agree to have that property

13   subject to forfeiture, you're agreeing not only that it is, but

14   that you're going to assist the United States in actually

15   forfeiting that property, and you're going to take whatever

16   steps are necessary for you to pass a clear title to the

17   United States, including maybe limiting or surrendering title

18   or executing documents to transfer your interest over to the

19   United States.

20           Is that your understanding?

21           THE DEFENDANT:  Yes, your Honor.

22           THE COURT:  It also requires that you voluntarily

23   repatriate forfeited funds that are contained in those overseas

24   bank accounts, if any, and to take whatever steps are necessary

25   to ensure that those assets are not sold, disbursed, wasted,

1    hidden, or otherwise made unavailable for this forfeiture

2    provision.

3              Is that your understanding?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Now, you're agreeing not to file a claim

6    against any of that property in any civil proceeding, whether

7    administrative or judicial, which you possibly had a right to

8    initiate in the past, you're agreeing not to.  And you're

9    agreeing to waive the right to notice of any of the forfeiture

10   proceedings regarding this property that I just mentioned.  And

11   you're agreeing not to file a claim or assist others in filing

12   a claim in that forfeiture proceeding.  So you're knowingly and

13   voluntarily waiving your right to a jury trial on the forfeited

14   assets.

15             Do you understand that?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  You're also knowingly and voluntarily

18   waiving any potential constitutional, legal, or equitable

19   defenses that you might think you have to those forfeited

20   assets in any proceeding.

21             Do you understand that?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  So you're waiving your claim or your

24   defense under the Eighth Amendment to the Constitution,

25   including that this is a claim of excessive fine, and you're

1    also -- you're not allowing these forfeiture assets or you

2    will -- you will recognize that these forfeiture assets will

3    not be treated as a satisfaction of any fine, restitution, cost

4    of imprisonment, or other penalty that I might impose upon you

5    in addition to the forfeiture, so it's separate and apart from

6    all of those other types of penalties.

7            Do you understand that?

8            THE DEFENDANT:  Yes, your Honor.

9            THE COURT:  Okay.  You're waiving your requirements

10   under the Federal Rules of Criminal Procedure here, 32.2 and

11   43(a), which is regarding notice of forfeiture in the charging

12   document, announcement of forfeiture at sentencing, and the

13   incorporation of forfeiture in the judgment.

14           You and your attorney understand that the

15   United States may file these motions for preliminary and final

16   orders of forfeiture, and you are agreeing that the

17   United States may file those as unopposed motions, and that

18   they may state in the certificates of conference for the

19   motions that you don't have an objection to the filing of those

20   motions to the relief being sought, without having to further

21   contact you or your attorney.

22           Do you understand that?

23           THE DEFENDANT:  Yes, your Honor.

24           THE COURT:  So the bottom line with all of the

25   property that I just mentioned is you're waiving your right to

1    assert any control over them.  You are agreeing to assist the

2    government in obtaining them and locating them and finding

3    them.  If they're overseas, you're going to aid them to come

4    back into the jurisdiction of the United States.  And as they

5    gather these funds and repatriate or collect these funds,

6    you're agreeing not to challenge that collection if they're

7    filing these notices in court.

8              Do you understand that?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Okay.  Because in a forfeiture proceeding,

11   you normally would have a right to challenge each of those

12   aspects.  You would -- you could have a right, for example, for

13   notice or you could have a right to a jury trial on the

14   forfeiture of property, and you're waiving those.

15             Do you understand that?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Okay.  Now, after I impose a sentence on

18   the two counts, 1 and 22, that you're pleading guilty to, the

19   government is agreeing that they'll dismiss the remaining

20   counts in this indictment against you.

21             Is that your understanding?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  Now, are you doing this today voluntarily?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  Is anyone forcing you to enter into this

1  agreement?

2          THE DEFENDANT:  No, your Honor.

3          THE COURT:  Is there anything outside of this

4  agreement that I have not seen that is a side agreement or some

5  side understanding that I am not being informed of?

6          THE DEFENDANT:  No, your Honor.

7          THE COURT:  Okay.  So let's then talk about what you

8  are waiving if you enter into this plea today.

9          So you have a constitutional right to a trial by a

10 jury of your peers, and you have a constitutional right to a

11 speedy trial.  And you have also a right to a trial, if the

12 prosecutor, the defense, and I all agreed, we could have a

13 bench trial where it's just by the judge.  But your

14 constitutional right to trial would mean that we would call

15 individuals randomly here into my courtroom, and during the

16 jury selection process we would question them regarding their

17 biases.  We would try to find the most impartial individuals.

18 And the way we do that is that we would allow your attorneys

19 and the government attorneys to exercise challenges to those

20 prospective jurors.  Those challenges can be peremptory, a

21 number that I simply give to each side, or they can be for

22 cause, where they are articulated to the Court and the Court

23 makes a ruling that they are stricken for cause.

24         Only after we select 12 individuals that we all agree

25 upon after this process would I swear them in to serve as the

1    jury on your case.

2            I would instruct that jury that you are innocent until

3    proven guilty, and that it would remain the government's burden

4    to prove you guilty beyond a reasonable doubt.  That burden

5    would remain with you all the way through the entire trial and

6    all the way into the jury deliberations, and it is only removed

7    when the jury reaches a unanimous verdict of guilty.

8            So if you are going to exercise your right to a

9    jury -- if you're going to exercise your right to enter into

10   this plea, you're waiving that jury selection process.

11           Do you understand that?

12           THE DEFENDANT:  Yes, your Honor.

13           THE COURT:  Now, the trial would be a trial where the

14   government would call witnesses, and they would present

15   evidence.  The evidence could be in any form.  It could be in

16   the form of communications, written or oral.  It could be in

17   the form of video.  It could be in the form of just testimony.

18   Whatever the evidence is, they would present that from this

19   witness stand here.  And each witness that testified, you have

20   a constitutional right to confront them because you have a

21   constitutional right to confront your accusers, so

22   Mr. Burlingame or Ms. DePodesta would cross-examine them.

23           Do you understand that?

24           THE DEFENDANT:  Yes, your Honor.

25           THE COURT:  Also during this process, your attorneys

1    could challenge the evidence based upon the Federal Rules of

2    Evidence.  For example, they might say it's not relevant or

3    that it's overly prejudicial.  And if you don't have a trial,

4    you can't challenge the evidence in that way.

5              Do you understand that?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  Now, you would not have to present

8    anything during this jury trial because it would always remain

9    the government's burden to prove you guilty beyond a reasonable

10   doubt.  But if you chose to present evidence and you had

11   difficulty getting that evidence or those witnesses here into

12   my courtroom, I would grant the oral request of the lawyers

13   that represent you to provide you with trial subpoenas to aid

14   you in getting witnesses and/or evidence here in your behalf to

15   defend yourself.

16             Do you understand that?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  And during this process, if you wanted to

19   testify, you could testify in your own behalf to that jury of

20   12.

21             Do you understand that?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  Now, if you chose not to testify, though,

24   I would tell that jury of 12 that they could make no inference

25   of guilt based upon your refusal to testify because you have a

 1    constitutional right not to incriminate yourself.

 2            Do you understand that?

 3            THE DEFENDANT:  Yes, your Honor.

 4            THE COURT:  Okay.  Now, it's only after that entire

 5    trial process is complete and the jury deliberates on each

 6    element of the wire fraud and each element of the spoofing and

 7    reaches a unanimous decision that you were guilty of each of

 8    those would I enter a verdict of guilty on Counts 1 and 22.

 9            Do you understand that?

10            THE DEFENDANT:  Yes, your Honor.

11            THE COURT:  By entering into this plea agreement

12    today, you are waiving all of those trial rights.

13            Do you understand that?

14            THE DEFENDANT:  Yes, your Honor.

15            THE COURT:  You would also be waiving any appeal

16    rights that would come out of a trial.  If you don't have a

17    trial, you can't appeal something that you do not have.

18            Do you understand that?

19            THE DEFENDANT:  Yes, your Honor.

20            THE COURT:  Okay.  Let me look to the -- is there an

21    appellate waiver?

22            MR. O'NEILL:  Yes, your Honor.  And just for the

23    record, there was a typographical error in the courtesy copies

24    provided to the Court yesterday, so at the bottom of -- at page

25    28, it should be subparagraph (b), just want -- and that's been

1    corrected in the execution copy of the --

2          THE COURT:  Okay.  So based upon your decision to

3    enter into a plea agreement where you're going to cooperate,

4    there is an understanding here that with that reduction you're

5    waiving all of your appellate issues that might have been

6    available to you if you had gone to trial.  And you are -- is

7    it a full appellate waiver?

8          MR. O'NEILL:  Yes, your Honor.

9          THE COURT:  Yes.  You're acknowledging that you're

10   waiving your right to appeal your conviction.

11         You're also acknowledging any right to appeal pretrial

12   rulings, your sentence, and the manner in which your sentence

13   is determined, including any term of imprisonment, any fine,

14   and including any order of restitution and forfeiture.

15         You're also waiving your attorneys' alleged failure or

16   refusal to file a notice of appeal in any collateral attack or

17   future challenge, including, but not limited to, what we call a

18   Title 28, Section 2255 challenge, which is a challenge to the

19   constitutional provisions of your sentence.  And you're waiving

20   all of that.

21         The only thing that has a little exclusion from the

22   waiver is you can't waive a claim of involuntariness or

23   ineffective assistance of counsel related to this paragraph,

24   this waiver.  It's a very small aspect that is carved out.

25   Otherwise, you're waiving your right to appeal or to later

1    collaterally attack your sentence.

2         Do you understand that?

3         THE DEFENDANT:  Yes, your Honor.

4         THE COURT:  Did your attorneys explain all of these

5    rights to you, sir?

6         THE DEFENDANT:  They did, your Honor.

7         THE COURT:  And did they go through all of these

8    waivers with you?

9         THE DEFENDANT:  Yes, they did, your Honor.

10        THE COURT:  Okay.  This is a public document.  It will

11   be filed in the public record.

12        Do you understand that?

13        THE DEFENDANT:  Yes, your Honor.

14        THE COURT:  You are, as I mentioned earlier, agreeing

15   to cooperate with the Fraud Section in collecting any

16   forfeiture, but it also includes cooperating collecting any

17   unpaid fine or restitution, and that includes, therefore,

18   giving them financial statements that were under oath or

19   affirmation regarding the financial assets.

20        Do you understand that?

21        THE DEFENDANT:  Yes, your Honor.

22        THE COURT:  Now, if you are -- if you plead guilty to

23   this and you're convicted under Title 7, which is the spoofing

24   count, that offense is one where you must be suspended from

25   registration under the chapter and shall be denied registration

1    or re-registration for five years or such longer period as the

2    Commodity Futures Trading Commission may determine, and barring

3    from using or participating in any manner any market regulated

4    by the Commission for five years or such longer period as the

5    Commission shall determine, and that is on the conditions as

6    the Commission may prescribe, unless the Commission determines

7    otherwise.

8         So you understand that by pleading guilty that the

9    Commission has the statutory authority or discretion to effect

10   this suspension, denial, or bar against you, and that otherwise

11   you are affirming that you're going to plead guilty in spite of

12   that collateral consequence that would prevent you from being

13   registered or from participating in the market regulated by the

14   Commodity Futures Trading Commission.

15        Do you understand that?

16        THE DEFENDANT:  Yes, your Honor.

17        THE COURT:  Now, you are not a citizen of the

18   United States, and so as someone who is not a citizen, you

19   could be removed from the United States or denied citizenship

20   or denied admission to the United States in the future if,

21   after you serve your sentence and are removed, it's possible

22   that that also could be a collateral consequence of pleading

23   guilty.

24        Do you understand that?

25        THE DEFENDANT:  Yes, your Honor.

1           THE COURT:  So under our laws, a broad range of crimes

2 are removable offenses, including the offense to which you're

3 pleading guilty.

4           Now, removal and immigration are part of a separate

5 proceeding.  They're not issues that I take care of.  It's a

6 different judge who would handle that, and so I cannot predict

7 how that will be handled.  But what I do need to understand

8 today is that you know that that is out there as another

9 proceeding, and that the potential for removal or being barred

10 from coming back in are potential consequences for this plea

11 agreement.

12           THE DEFENDANT:  Yes, your Honor.

13           THE COURT:  Okay.  Now, if later on you were to ever

14 violate any of the conditions of this agreement, or if you were

15 to move to withdraw this plea of guilty, the factual basis that

16 we are about to get into in just a moment is going to be

17 admissible as substantive evidence in any criminal or civil

18 proceeding against you, and that the statements made by you to

19 the Fraud Section or to other designated law enforcement

20 agents, such as the agents who have been investigating the

21 case, and testimony that you gave before a grand jury or any

22 tribunal, whether prior to the signing of this agreement or

23 not, and any leads that such testimony or testimony, that

24 they'll all be admissible in evidence in a criminal or civil

25 proceeding brought against you, and that you shall assert no

1    claim under the United States Constitution, the Sentencing

2    Guidelines Commission, Rule 410 of the Federal Rules of

3    Evidence, Rule 11(f) of the Federal Rules of Criminal

4    Procedure, or any other federal rule, that those statements

5    made by you or any leads made by you should be suppressed or

6    otherwise inadmissible, and it is the intent of this agreement

7    to waive all of those rights.

8              Do you understand that?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  So I have no idea what those are because

11   this is my first time in seeing you, but any statement given to

12   law enforcement, any grand jury testimony, any leads that they

13   get from that, you are barred from challenging in a suppression

14   later on, and they would come in against you as an admission.

15             Do you understand that?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Okay.  If I don't accept the defendant's

18   plea today, this becomes null and void.

19             Do you understand that?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  Okay.  So let's turn now to what I

22   mentioned has to be the factual basis.

23             Aside from understanding your rights and the maximum

24   penalties, now there needs to be facts that, in fact,

25   constitute a crime under both Count 1 and Count 22.

1         So what would the government's evidence be that would

2    show that he's guilty beyond a reasonable doubt?

3         MR. O'NEILL:  Your Honor, as you're likely aware, the

4    defendant has admitted to the facts in Counts 1 and 22 of the

5    indictment and detailed written statement of facts in the

6    factual basis of paragraph 7 of the plea agreement.  It's some

7    11 pages, your Honor.  Just so, for simplicity sake, I'd

8    propose, if it's all right with the Court, summarizing the key

9    facts.

10        THE COURT:  That's fine.

11        MR. O'NEILL:  With respect to Count 1, your Honor, the

12   wire fraud count, from in or around January 2009 through in or

13   around April 2014, the defendant Navinder Sarao devised and

14   participated in a scheme to defraud and deceive other market

15   participants trading S&P 500 E-mini futures contracts, which

16   I'll call the E-mini, on the Chicago Mercantile Exchange, or

17   CME.

18        Specifically, during this time frame, Mr. Sarao

19   knowingly placed bogus spoof orders to sell and to buy E-mini

20   futures contracts with the express purpose and intent of

21   inducing other market participants to react and to place their

22   own orders, orders that these other market participants

23   otherwise would not have placed but for Mr. Sarao's bogus spoof

24   orders.

25        The net effect of this chain of events, as Sarao well

1    knew and intended, was artificially to depress or artificially
2    to inflate the price of E-mini futures contracts.

3            In instances where the price was artificially
4    depressed or inflated, the defendant Mr. Sarao would then
5    execute legitimate genuine orders at these artificial prices
6    and later liquidate his positions for profit.

7            Using a variety of automated and manual techniques, as
8    set forth in detail in paragraph 7 of the plea agreement, Sarao
9    made at least $12.8 million in illicit gains.

10            At all relevant times, the bogus or spoof orders were
11    placed by Sarao from the United Kingdom using an electronic
12    trading software that transmitted and caused to be transmitted
13    order signals and communications to the CME's exchange servers
14    either -- in either Chicago, Illinois or the surrounding areas
15    within the Northern District of Illinois.

16            Now, with respect to Count 22, the spoofing count, on
17    March 10th, 2014 at approximately 9:34 a.m. Central Time, the
18    defendant Navinder Sarao, using one of his automated
19    techniques, knowingly placed and caused to be placed at nearly
20    the exact same time five unique orders to sell 300 lots of
21    futures contracts of the E-mini.  These sell orders were placed
22    on and through the CME's Globex exchange within this district.
23    On March 10, 2014, the CME was a registered entity with the
24    Commodity Futures Trading Commission.  At the time these sell
25    orders were placed, Defendant Sarao intended and had the

1    conscious purpose and desire to cancel all of the sell orders

2    before they were executed.  In addition, and at the time these

3    sell orders were placed, the defendant did not place any of the

4    orders as part of any legitimate good-faith attempt to execute

5    any part of these sell orders.

6         THE COURT:  Okay.  So what is the -- the wire is the

7    five orders?  Is that right?

8         MR. O'NEILL:  Your Honor --

9         THE COURT:  The wire that's charged?

10        MR. O'NEILL:  There were thousands of bogus spoof

11   orders that were placed.  The wire fraud count charges a scheme

12   ranging from January 2009 to in or about April 2014, but there

13   were thousands of bogus orders submitted to the exchange here

14   within the district.  The spoofing count focuses on one example

15   of that conduct on March 10th, 2014.  So, yes, your Honor,

16   those five unique sell orders for Count 22 are among the wires

17   supporting the wire fraud count in Count 1.

18        THE COURT:  Okay.  And they were sent between where

19   and where?

20        MR. O'NEILL:  From the United Kingdom into the CME's

21   Globex exchange, with service located within this district in

22   the Northern District of Illinois.

23        THE COURT:  Okay.  All right then.  Did you hear all

24   of the facts that he just set forth for the two counts?

25        THE DEFENDANT:  Yes, I did, your Honor.

1          THE COURT:  Is there anything first that he said

2    orally, just now, that you disagree with?

3          THE DEFENDANT:  No, your Honor.

4          THE COURT:  Now, there's a much larger factual basis

5    set forth in this plea agreement, and it goes for I think you

6    said 11 pages, approximately.

7          MR. O'NEILL:  Approximately 11 1/2, your Honor, yes.

8          THE COURT:  You've read all of those 11 pages, right?

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  And you've talked with your attorneys

11   about all of those facts, correct?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  Okay.  Anything in those 11 pages that you

14   disagree with?

15         THE DEFENDANT:  No, your Honor.

16         THE COURT:  Okay.  Then how do you plead to Count 1 of

17   the indictment?

18         THE DEFENDANT:  How do I plead?  Guilty.

19         THE COURT:  And how do you plead to Count 22 of the

20   indictment?

21         THE DEFENDANT:  Guilty, your Honor.

22         THE COURT:  All right.  I'm going to accept your pleas

23   of guilty to the two counts.  I'm going to order -- well, maybe

24   I don't want to order a probation officer's report just yet if

25   you're still working with this individual.  Correct?

1          MR. O'NEILL:  We are, your Honor.

2          THE COURT:  Okay.  So then I'll wait to order a

3    probation officer's report.  So I'll rely on the parties to

4    keep me apprised of that, because we don't like that to be out

5    there for too long.

6          For your information, the way the sentencing works is

7    that we have a probation department, and that person will

8    interview you, and your attorneys are permitted to be present.

9    And then I have sentencing position papers, and your attorneys

10   can present any and all mitigating information that they want

11   to present to me in any form.  We will have a hearing where

12   that information can be presented, either in testimony or in

13   letters or however else it is provided to the Court.  The

14   government has an obligation to provide me with any aggravating

15   information.  And then we'll go through that process, as I

16   mentioned, of the guideline calculation and then the factors

17   and then I'll conclude on the sentence.  But we're not going to

18   set that sentencing date yet based upon the fact that you say

19   there's some work to be done.

20         Now, I realize it may be a moot issue because of the

21   extradition hearings abroad, but of course you do have a right

22   to have your consulate notified when you are arrested if you

23   are not a U.S. citizen.  I assume that's all moot now that

24   we've had this protracted extradition hearing, but we might as

25   well put that on the record.

1           And so we will now turn to the issue of release or

2    detention.   What is the government's position?

3           MR. O'NEILL:   Your Honor, the parties would submit and

4    agree that, although this is -- the presumption has now

5    shifted, in light of the defendant's plea and conviction, that

6    there are four principle reasons why detention is not necessary

7    in this case, and the parties have proposed a series of

8    conditions for your Honor for the defendant's release back to

9    the United Kingdom.

10          Firstly, your Honor, the defendant has immediately, as

11   your Honor noted at arraignment, has immediately and fully

12   accepted responsibility for his offenses by pleading guilty

13   within days of his arrival in the United States and at

14   arraignment.

15          Secondly, your Honor, as noted in the plea agreement,

16   the defendant has agreed -- agreed to and has already been

17   cooperative with the government, and we, the government, would

18   like his active cooperation to continue, and for a number of

19   reasons believe he would be much more effective if he was able

20   to do so from London rather than be here in -- at the MCC in

21   custody.

22          In addition, your Honor, the parties have proposed for

23   the Court's consideration a substantial bond package, as well

24   as conditions of release, including a $750,000 proposed bond,

25   and are working out -- this is a bond that would be secured by

1    the value of the defendant's parents as well as the defendant's

2    brother.  And we understand --

3              THE COURT:  Value of what?  Their house?

4              MR. O'NEILL:  The value of their homes, excuse me,

5    their residences in the United Kingdom.  We understand there's

6    a procedure by which the Court can obtain -- the Clerk of Court

7    can obtain essentially a lien or charge document on those two

8    properties in the United Kingdom.

9              In addition, there are restrictions on the defendant's

10   travel as well as proposed curfew requirements, and he would be

11   placed in the custody of his father in the United Kingdom under

12   the proposed conditions.

13             THE COURT:  What does his father do?

14             MR. BURLINGAME:  He's retired, Judge.

15             THE COURT:  Okay.  Go ahead.

16             MR. O'NEILL:  And, fourth, your Honor, I would just

17   note that while the defendant was initially detained upon his

18   arrest in the United Kingdom, he has been released on bond in

19   the United Kingdom for about over 14 -- or 16 months now, and

20   my understanding, he has fully complied with his conditions of

21   release and has not had one violation in the United Kingdom in

22   the last 16 months, and when ordered extradited he

23   voluntarily -- he appeared, met the agents to be transported,

24   transported to face the charges here in the United States.

25             And those -- the applicable conditions of his U.K.

1    release have been incorporated into the parties' proposed bond

2    package for the Court's consideration.

3            So in light of those four reasons --

4        (Counsel conferring.)

5            MR. O'NEILL:  And in addition, your Honor, we have a

6    proposed consent order of forfeiture that -- there is

7    $6.5 million in the bank account, your Honor, referenced in

8    paragraph 18 of the plea agreement.  That's incorporated in a

9    consent order of forfeiture, which would be entered today if

10   the judge approves it.

11           THE COURT:  I know that the Pre-Trial Services

12   officers were preparing a report.

13           Did you manage to get anything in writing for me?

14           PRETRIAL SERVICES OFFICER:  Yes, your Honor.  We have

15   a report.

16           THE COURT:  Okay.  Why don't you pass it to my

17   courtroom deputy.

18           Did you give them to the defense and the prosecutors

19   yet?

20           PRETRIAL SERVICES OFFICER:  No, your Honor.  They have

21   not been distributed yet.

22           THE COURT:  Thank you.

23       (Tendered.)

24           THE COURT:  Well, I can tell you -- you can see that

25   the Pre-Trial Services officer is saying that there's no

1    conditions that can reasonably assure his presence here, and

2    they came up just right before, because they hadn't had the

3    written report, and I know that their main concern was the

4    property, and that they had contacted, I believe it is

5    Ms. Bissell, at the prosecutor's office about whether, in fact,

6    we can place a lien of some kind on the property overseas and

7    have access to that property or if that's just, you know,

8    something that is a charade, and I think that was their

9    concern.

10              MR. BURLINGAME:  Judge, if I could speak to that

11   issue.

12              THE COURT:  Go ahead.

13              MR. BURLINGAME:  I am admitted in New York.  I'm a

14   former AUSA in Brooklyn, but I now practice from London.  And

15   in a recent case, I just secured the same bail package in the

16   District of Massachusetts secured by the defendant's home in

17   that case in the U.K., so I've been through this exact

18   procedure.

19              THE COURT:  So what is it?  What is the procedure?

20              MR. BURLINGAME:  What the procedure is is that the

21   Clerk of the Court will effectively have a, what's called in

22   England a charge on the property, which is essentially a

23   mortgage on the property.  And if the government -- or if the

24   Court were to find there had been a violation of any of the

25   conditions of release, the charge that's been filed with the

1    land registry in the U.K., and upon notification that there's

2    been a violation of the conditions of release, the Clerk of the

3    Court would immediately take possession of both the -- my

4    client's parents' home for the full value and his brother's

5    home for the full value.  And my client's parents' home is the

6    house where he still lives in his bedroom that he's lived in

7    his whole life.  And his parents' assets beyond the home total

8    $75,000, so he would be completely destroying his parents'

9    lives.  And he -- he has a very small circle of existence in

10   London and also his -- it would wipe out approximately a third

11   of his brother's net worth, and he has a family to support and

12   another child on the way.  So it would be -- it's a significant

13   weight for -- for the defendant to bear and obviously places a

14   huge amount of suasion on him.

15           And just to underline, I've been representing the

16   defendant since he was first arrested in the U.K.  He did the

17   first four months in prison in the U.K. And due to his

18   Asperger's, he has very limited functionality in prison.  He

19   has -- I think that as -- it would create significant

20   limitations on his ability to proactively cooperate, which is

21   the primary focus of his cooperation.  And, basically, he has

22   some extraordinary abilities with respect to pattern

23   recognition and certain sorts of mathematical abilities, but he

24   has some fairly severe social limitations and other

25   limitations, and his ability to fulfill the cooperation terms

1  of the agreement I think would be non-existent if he were to be

2  incarcerated.

3         He's also been, as Mr. O'Neill mentioned, he's been on

4  supervised -- or on bail conditions in London for the last 16

5  months.  He's been reporting three times a week to the police

6  station.  He's had a curfew in effect.  He's never missed --

7  he's never had the slightest violation of the conditions of his

8  release.  He was advised by his U.K. lawyers that there was a

9  potential under the extradition treaty between the U.K. and the

10 U.S. that there was potentially a dual criminality issue here.

11 He exercised his rights as a U.K. citizen under the agreement

12 between the United Kingdom and the U.S. to see if there was

13 indeed a basis for his extradition.  As soon as those

14 procedures were lost, he reported, as directed, he reported to

15 Heathrow to fly here.  And when he did that, it was following

16 weeks of meetings with me in which I had explained this, what's

17 happened today, did not develop in the last two days, it was he

18 came to the United States with the full knowledge that he would

19 be pleading guilty within 2 days to a potential 30-year jail

20 sentence, and he showed up 40 minutes early to report to the

21 agents.  So he fully understands what he would potentially

22 be -- the consequences both to his family and to himself.

23         And I think for those reasons, the -- I'm extremely

24 confident that he will fulfill the conditions of the bond.

25         I think the government has agreed to the bond because

1    they have that same confidence from working with him over the

2    past two days.

3              And if your Honor has any further questions --

4              THE COURT:  I have a few.

5              So the process for putting this essentially lien on

6    the homes in the U.K., how long does that take?

7              MR. BURLINGAME:  I think we can have it done in two

8    weeks, as soon as we have the bail conditions in place.  It's

9    just you can't do it in advance because you need the --

10             THE COURT:  The bail document.

11             MR. BURLINGAME:  -- the bail document to be able to

12   submit to the land registry.

13             THE COURT:  Okay.  And then in the case that you

14   mentioned that you had experience, you didn't have to seek

15   getting it.  You just put it on --

16             MR. BURLINGAME:  Correct.

17             THE COURT:  Right.  So you don't know what would

18   happen if it didn't work.

19             MR. BURLINGAME:  You know exactly what's going to

20   happen.  There's no --

21             THE COURT:  Uh-hum.

22             MR. BURLINGAME:  There's no potential for error with

23   this action.

24             THE COURT:  The one distinction being that if he's not

25   the owner of the home for his parents and for his brother,

1    although this plea agreement has him waiving all of his rights

2    to his property in his name, and also aiding the government in

3    seeking the property that is, you know, his, it really doesn't

4    aid you at all if it's the brother's property and the mother's

5    and father's property if something were to happen, because he

6    can't help you get that, right?  There's no access to it.

7              MR. BURLINGAME:  With -- with respect --

8              THE COURT:  His name isn't on the mortgage or the

9    title or anything like that, right?

10             MR. BURLINGAME:  The defendant's name is not.  But

11   with respect, your Honor, it's actually a much stronger avenue

12   to enforce the, if he were to violate the bond, to enforce

13   the -- take possession of the suretor's property.

14             THE COURT:  How so?  Explain it to me.

15             MR. BURLINGAME:  Because the -- it's -- the Clerk of

16   the Court has a right to take the property, no questions asked,

17   no procedure --

18             THE COURT:  Without his --

19             MR. BURLINGAME:  No procedure whatsoever in the U.K.,

20   upon -- upon a violation of a condition.

21             THE COURT:  Okay.  So I make a finding of the

22   violation, that violation triggers the Clerk of the Court to

23   seize to provide to the U.S.

24             MR. BURLINGAME:  Yeah, the Clerk of the Court would

25   just notify the U.K. land registry, they would force a sale,

1    and the full amount of the bond would be provided back to the

2    Clerk of the Court, and there's no procedure in the U.K. to

3    fight it.

4             THE COURT:  Okay.  Tell me about the consent agreement

5    that you mentioned.

6             MR. O'NEILL:  Your Honor, just to underscore, I think,

7    as echoing what Mr. Burlingame had said, but in addition, from

8    the government's perspective, the -- we are very interested in

9    the defendant's proactive cooperation and strongly believe

10   that --

11            THE COURT:  But you want him over there proactively

12   cooperating?

13            MR. O'NEILL:  Yes, your Honor, for -- because of the

14   nature of the cooperation that we anticipate and hope to obtain

15   from this defendant, we believe it just simply -- it needs to

16   be done from his home in London, in the United Kingdom --

17            THE COURT:  Okay.

18            MR. O'NEILL:  -- and not from the detention facility

19   here --

20            THE COURT:  Okay.

21            MR. O'NEILL:  -- in the United States, so we strongly

22   support that.

23            THE COURT:  What was the consent judgment that you

24   mentioned that he's signing today?

25            MR. O'NEILL:  The forfeiture, your Honor.  Excuse me.

1    So pursuant to paragraph 18 of the agreement, we have

2    a proposed consent order of forfeiture for the Court's

3    consideration where the defendant agrees today to forfeit the

4    entire 12.8 million that your Honor referenced in paragraph 18,

5    including the monies in a New York escrow account, which are

6    approximately $6.5 million, which, if the Court should decide

7    to enter that order, would be forfeited today.

8        THE COURT:  Okay.  And are you comfortable that you

9    have access to -- that you've frozen all of the accounts?

10       MR. BURLINGAME:  Judge, if I might, we've been engaged

11   in a process with the CFTC for the last 16 months of attempting

12   to collect the defendant's assets, all of which have been

13   stolen from -- I mean, he invested in a Ponzi scheme and in

14   other ventures in which he has been unable, or our firm,

15   together with the CFTC, have not been able to recover the funds

16   beyond the nearly 6 to 7 million dollars which are in our

17   accounts, in the escrow account, but we will -- are actually

18   looking forward to the assistance of the government in helping

19   us recover those funds so that Mr. Sarao can satisfy his

20   obligations.

21       THE COURT:  Okay.  Please place your name on the

22   record, sir.

23       PRETRIAL SERVICES OFFICER:  Good afternoon, your

24   Honor.  Matthew Bonestroo on behalf of Pre-Trial Services.

25       THE COURT:  Okay.  Do you have anything to add other

```
 1    than the written report that I have here that you want to note
 2    for my consideration?
 3              PRETRIAL SERVICES OFFICER:  No, there are no
 4    additional considerations we would have.
 5              THE COURT:  Okay.  Thanks very much.  Thanks for
 6    racing to get me a report.  I know you're all working on a
 7    number of them that I have over the course of the next day or
 8    so.
 9              All right.  Do you have a proposed bond that you've
10    worked out?  I'd like to actually see it.  Oh, you have it.
11              THE CLERK:  I put it in the stack also.  It's buried.
12              MR. O'NEILL:  Your Honor, if I may, there have been
13    some minor edits to the version we sent to chambers yesterday.
14    May I pass this up to the Court?
15              THE COURT:  Sure.
16         (Tendered.)
17              THE COURT:  So when is your proposal here?  If I'm
18    reading your edits correctly on the passport, he's going to
19    need the passport if he comes in and cooperates with you here,
20    and you've got in his plea agreement that he needs to do so
21    upon 7 days' notice, so is it -- are you going to hold the
22    passport?
23              MR. BURLINGAME:  Yes, your Honor.
24              THE COURT:  Okay.  What's your idea?
25              MR. O'NEILL:  Your Honor, well, the idea would be that
```

1    actually that provision of conditions had been stricken from

2    the -- from the current agreement so that there would be no --

3              THE COURT:  Yeah, but I'm asking.  I want to know

4    where it is and how --

5              MR. O'NEILL:  Counsel would retain the passport, your

6    Honor.

7              THE COURT:  All right.  So you would hold on to it.

8    As an officer of the court, you would say he can only have it

9    for purposes of the travel that is compliant with this Court's

10   proceedings or with the plea agreement.

11             MR. BURLINGAME:  Yes, of course, Judge.

12             THE COURT:  Okay.  So how am I going to warn his

13   parents and his brother about the risk of forfeiting their

14   property?  Are we going to have a conference, you know, with

15   them so that they are aware of this?

16             MR. BURLINGAME:  I've explained it to them thoroughly,

17   Judge.  I have their phone numbers if the Court would like to

18   get them on the phone now or we can schedule that for whenever

19   your Honor would like to do it, but I have gone through it with

20   them --

21             THE COURT:  It's about 10:00 o'clock there at night?

22             MR. BURLINGAME:  Yeah, but they're standing by because

23   I anticipated your Honor might --

24             THE COURT:  Right.  I mean, they need -- I need to be

25   aware that they know that the risk of what they're doing is

```
 1        losing their houses.
 2                MR. BURLINGAME:  Yes.
 3                THE COURT:  Okay.  Well, I think we should do a phone
 4        conference at the very least.  So do you want to -- can you --
 5        do you know how to put it on the -- so it goes overhead, so
 6        everybody can hear it?
 7                THE CLERK:  Can I make an international call from
 8        here?
 9                THE COURT:  Oh, I don't know.  I mean, I can in my
10        chambers.  If not, we'll go back in chambers and do it if we
11        can't.  Can you try?
12            (Tendered.)
13                THE COURT:  So you still have to do 9 and then the
14        country code.
15                THE CLERK:  Okay.
16                MR. BURLINGAME:  Judge, this is the parents' line, and
17        I believe the brother is with the parents, but I have the
18        brother's number.
19                THE COURT:  So this is -- is it Nachhattar --
20                MR. BURLINGAME:  Exactly.
21                THE COURT:  -- Sarao and Daljit?  Is that correct?
22                THE CLERK:  I may sound like an idiot asking this, but
23        with this, your Honor, 4 4, and then that number -- it's not
24        letting me.
25                THE COURT:  So 9 1 4 4, do you want to try that?
```

1          MR. BURLINGAME:  I think it's 0 1 1.

2          THE COURT:  Oh.  0 1 1.  So I think you still have to

3    hit 9 to get the outside, then go 0 1 1.

4          MR. BURLINGAME:  Judge, with your Honor's permission,

5    might I just e-mail the defendant's brother to make sure

6    everyone is together?

7          THE COURT:  Yes, sure.

8          THE CLERK:  I don't make a lot of international calls.

9    Sorry.

10          THE COURT:  We could probably Skype it, too.

11       (Courtroom Deputy places phone call.)

12          THE CLERK:  Hello.  Is this Mr. or Mrs. Sarao?  Hi,

13    this is Lynn, Judge Kendall's courtroom deputy.  I'm going to

14    transfer you into the courtroom.  Okay?

15       (Ringing.)

16          THE COURT:  Good evening.  My name is Judge Kendall,

17    and you are on the record and in open court.

18          Can you please tell me who is on the phone?

19          MR. NACHHATTAR SARAO:  My name is Nachhattar Sarao.

20          THE COURT:  Okay.  And do you also have Daljit with

21    you?

22          MR. NACHHATTAR SARAO:  Yeah, she is here as well.

23          THE COURT:  Is Jasvinder with you?

24          MR. NACHHATTAR SARAO:  No, he is separately.

25          THE COURT:  Okay.  All right.  Mr. Sarao, I am here in

1    my courtroom in Chicago where your son has just pled guilty to

2    the charges against him, and I am considering releasing him

3    with some significant conditions of release.  But in order for

4    me to do that, I need you to understand what one of those

5    conditions is.  He has as a proposal here that your home that

6    you live in with your wife will be part of a bond package,

7    meaning that if your son violates one of the conditions of bond

8    that I put him on, you could lose your home.

9              Do you understand that?

10             MR. NACHHATTAR SARAO:  Yes.  Yes, ma'am.

11             THE COURT:  I want to tell you specifically what some

12   of those conditions are, because you need to understand if he's

13   living with you what those conditions are.

14             First, he would need to be in contact with the

15   United States Pre-Trial Services Office as directed by that

16   office.

17             Second, he is not permitted to travel outside of the

18   United Kingdom except to and from the United States to this

19   courtroom for his court proceedings or to comply with the terms

20   of his plea agreement, which includes, for example, contact

21   with the Department of Justice Fraud Section.  And he would

22   need to give notice to the United States Pre-Trial Services

23   Office of that travel.

24             Another condition is that he may not have or obtain

25   another passport or an international travel document.  His

1    passport will be held instead by his defense attorney who will

2    provide it to him when he is permitted travel by the U.S.

3    Pre-Trial Services officer.

4         Also --

5         MR. NACHHATTAR SARAO:  Fine.

6         THE COURT:  Also he is to avoid contact, directly or

7    indirectly, with any individuals that he may believe to be a

8    victim or a witness in this particular investigation or

9    prosecution.

10         He's not allowed to possess a firearm, a destructive

11    device, or another weapon.

12         He's not allowed to excessively use alcohol, which is

13    usually defined here as a blood alcohol level of over

14    .08 percent.

15         He is not allowed to possess a narcotic drug or any

16    controlled substance unless it is prescribed by a licensed

17    medical practitioner.

18         And he's going to need to stay in curfew at home

19    between 11:00 p.m. at night and 4:00 a.m.

20         And he is to report as soon as possible to the

21    Pre-Trial Services officer any contact that he has with law

22    enforcement, including being arrested, even a traffic stop, and

23    even being questioned by law enforcement.

24         He also is required to comply with the terms of his

25    plea agreement that was entered in this case, so you will need

1    to read that plea agreement and understand what he is to do in

2    the plea agreement.

3          He's not permitted to trade, directly or indirectly,

4    any United States securities, commodities, futures, or other

5    financial instruments.

6          Those are all conditions of his bond.

7          So if, for example, he were to violate any of those

8    and be brought before the Court or we couldn't find him because

9    he had violated, then your house could be taken for that

10   violation.

11         Do you understand that?

12         MR. NACHHATTAR SARAO:  I understand, ma'am.

13         THE COURT:  The other thing to understand is that in

14   order for us to have this house posted, there will be a charge

15   placed on the property so that the Clerk of Court can seize the

16   property, if necessary.

17         Do you understand that?

18         MR. NACHHATTAR SARAO:  I do, ma'am.

19         THE COURT:  In spite of that burden, are you willing

20   to post your home as part of the secured bond for the release

21   of your son?

22         MR. NACHHATTAR SARAO:  Yes, I am, ma'am.

23         THE COURT:  Okay.  I will require that the defense

24   attorney provide you with both the conditions of release as

25   well as the plea agreement, so that he's aware of the different

```
 1    conditions --

 2              MR. BURLINGAME:  Yes, your Honor.

 3              THE COURT:  -- regarding any violations.

 4              All right.  Thank you for -- do you have any questions

 5    for me?

 6              MR. NACHHATTAR SARAO:  No.  I just want to say most

 7    everything, he doesn't take any sort of intoxicant at all.  He

 8    doesn't even drink tea or coffee.

 9              THE COURT:  Okay.

10              MR. NACHHATTAR SARAO:  Those are the things that --

11    and we have complied with the past year with every single thing

12    the Court said here, so we have no reason to violate that at

13    all.  We will make sure that everything is carried out to the

14    letter, ma'am.

15              THE COURT:  I appreciate that.  Thank you.  It is my

16    Court's order.  Thank you.

17              All right.  You have a nice evening.

18              MR. NACHHATTAR SARAO:  Thank you, ma'am.

19              THE COURT:  All right.  Do you have another phone

20    number?

21              THE CLERK:  I do, for Jasvinder, his brother.

22              THE COURT:  Okay.  Thank you.

23         (Courtroom Deputy places telephone call.)

24              THE CLERK:  9 0 1 1, correct?

25              MR. BURLINGAME:  Yes, and then the 4 4.
```

 1          THE CLERK:  This is directly on here.  It's on here.

 2     It's ringing from here.  There's a first time for everything.

 3          THE COURT:  This is Judge Kendall.  Is someone on the

 4     phone?

 5          THE CLERK:  I think it's going to take a minute.

 6          THE COURT:  Am I hitting speaker or am I not?

 7          THE CLERK:  You have to wait for it to answer.  This

 8     is the first time this has happened.  It took a little while

 9     for ...

10          MR. BURLINGAME:  I know he's awaiting the call, your

11     Honor.  I was just texting him.

12          THE COURT:  It's reflecting that it's here, I believe.

13          THE CLERK:  Hello?

14          THE COURT:  It's still there, I think.

15          THE CLERK:  Is he on a different line?  I'm going to

16     have to try again.  I can't figure out this system.

17        (Courtroom Deputy places telephone call.)

18          MR. BURLINGAME:  He says he could hear you, but you

19     couldn't hear him.

20          THE COURT:  Oh, interesting.

21          THE CLERK:  Hello, is this Jasvinder?

22          Hi, I'm going to transfer you into the courtroom so

23     you can talk to Judge Kendall.  Hold on just a moment.

24        (Ringing.)

25          THE COURT:  Good evening.  My name is Judge Kendall,

1    and you are on the record and in open court.

2            Can you please tell me your name?

3            MR.  JASVINDER SARAO:  Yeah, my name is Jasvinder

4    Sarao.

5            THE COURT:  Okay.  Good evening, Mr. Sarao.

6            Your brother is in front of me on a matter where he

7    has just pled guilty to criminal charges, and I am considering

8    whether he should be released or detained, and there is a

9    proposed bond in front of me that includes a number of

10   conditions, and it is secured in part by your residence.

11           Do you understand that?

12           MR.  JASVINDER SARAO:  I do, yes.

13           THE COURT:  So what that means is that if he were to

14   violate his bond, the house that you are living in, I assume --

15   it's the house you're in, correct?

16           MR.  JASVINDER SARAO:  It's -- I've got three

17   properties.  It's one of my properties.

18           THE COURT:  It's one of your properties.  So it's not

19   one that you're living in?

20           MR.  JASVINDER SARAO:  It's not the one I'm living in,

21   no.

22           THE COURT:  It's being rented out or is it a vacation

23   home?

24           MR.  JASVINDER SARAO:  Yeah -- no, no, it's being

25   rented out.

1          THE COURT:  Okay.  So that house would be taken and

2     the entire value of it would be turned over for a violation of

3     bond.

4          Do you understand that?

5          MR.  JASVINDER SARAO:  I do.

6          THE COURT:  So the conditions of release that are

7     being proposed are the following conditions:

8          One, that he must submit to the supervision of the

9     United States Pre-Trial Services Office and that he report to

10     that office as they direct him to.

11          Secondly, that he cannot travel outside of the United

12     Kingdom except to and from the United States after giving

13     notice to the U.S. Pre-Trial Services Office and solely to be

14     here in my courtroom or to comply with the terms of his plea

15     agreement, which includes that he cooperate with the

16     United States Department of Justice Fraud Section.

17          And when he does that, his passport will be held by

18     his defense attorney, Mr. Burlingame, who has it, and will

19     provide it once the U.S. Pre-Trial Services says he is

20     permitted to travel.  Otherwise, he's not allowed to travel,

21     and he is not allowed to obtain another passport or any other

22     international travel document.

23          He is also -- he must not have contact with any victim

24     or witness in this particular case for investigation or

25     prosecution.

1          He is not allowed to possess a firearm, a destructive

2    device, or another weapon.

3          He's not allowed to excessively use alcohol, which is

4    defined here as generally being over a blood alcohol level of

5    .08 percent.

6          He's not allowed to unlawfully possess a narcotic drug

7    or any other controlled substance unless it's prescribed by a

8    medical practitioner.

9          He must stay within his home between 11:00 p.m. and

10   4:00 a.m.

11         And he must report to the Pre-Trial Services any

12   contact that he has with law enforcement, including whether

13   he's arrested, even a traffic stop, and even if he's just

14   questioned.

15         And he must comply with the terms of his plea

16   agreement and not trade, directly or indirectly, any

17   securities, U.S. securities, commodities, futures, or other

18   financial instruments.

19         So those are the conditions; and if he violates those

20   conditions, you risk losing the other piece of property.

21         Do you understand that?

22         MR.  JASVINDER SARAO:  I do.

23         THE COURT:  Do you also understand that the parties

24   agree that there will be a charge placed on that property that

25   will then be filed with the Clerk of Court; and if that

1    violation occurs, the property will go directly to them without

2    any hearings or anything like that.  It will be a violation of

3    the Court's order.

4              Do you understand that?

5              MR.  JASVINDER SARAO:  Yes, I do, yeah.

6              THE COURT:  Now, based upon the fact that those are

7    the conditions, are you still willing to post that property as

8    security for your brother's bond?

9              MR.  JASVINDER SARAO:  I am, yes.

10             THE COURT:  Okay.  Is anyone forcing you to do this?

11             MR.  JASVINDER SARAO:  No, they're not, no.

12             THE COURT:  Are you doing so voluntarily?

13             MR.  JASVINDER SARAO:  I am, yes.

14             THE COURT:  Okay.  All right then.  Any questions from

15   anyone regarding this property?

16             Okay.  All right then, sir, you can have a good

17   evening.

18             Thank you for taking the call.

19             MR.  JASVINDER SARAO:  Thank you.  No, thank you.

20   Thanks a lot.  Bye.

21             THE COURT:  Bye.

22             Okay.  So I think that you need the actual

23   residences -- not just the "residence owned by" -- because

24   clearly there's another residence, he has two.  So you actually

25   need to have addresses or something in this bond here.

1          MR. BURLINGAME:  We have the address.  We can just

2    fill it out --

3          THE COURT:  Yeah, I think it needs to be -- because it

4    needs to be clear on the actual court order.

5          MR. BURLINGAME:  Okay.

6          MR. O'NEILL:  Yes, your Honor.

7          THE COURT:  So -- well, because of his cooperation up

8    front and the fact that the government is agreeing and the

9    process appears to be that we can obtain the property if he

10   violates, and primarily because of that forfeiture agreement

11   that's being signed today, I will agree to your agreed bond and

12   release him once all of it is signed off today.

13         So you need to have him processed -- was he processed

14   by the marshals on the 24th floor yet?

15         MR. BURLINGAME:  He's been processed, Judge.

16         MR. O'NEILL:  Yes, Judge.

17         THE COURT:  And by the FBI?

18         MR. O'NEILL:  Yes, Judge.

19         THE COURT:  All right.  So let me sign off on this.

20         I want the appearance bond to have addresses.

21         MR. BURLINGAME:  I have them right here right now.

22         THE COURT:  Okay.

23      (Tendered.)

24         THE COURT:  Especially based upon the statement that

25   there's two properties by his brother.

1        MR. O'NEILL:  And, your Honor, at this time I'd

2   respectfully move, and can tender to the Court, move the entry

3   of the consent order of forfeiture that I mentioned previously.

4        THE COURT:  Yes.

5        MR. BURLINGAME:  I have a copy for the Court's

6   consideration here.

7        THE COURT:  I'd like to see it.

8        MR. O'NEILL:  And respectfully request the Court waive

9   its notice of motion practice, and we'd move the entry.

10       THE COURT:  I will do so, specifically based upon this

11  need to have it for the bond --

12       MR. O'NEILL:  Thank you, your Honor.

13       THE COURT:  -- consideration.

14       MR. BURLINGAME:  Judge, would you like us to fill in

15  the parents' address, too?  They do only have the one property.

16       THE COURT:  I do.  I want both of them on there.

17       MR. BURLINGAME:  Okay.

18       THE COURT:  All right.  Mr. Sarao, is that your

19  signature that is on this page?

20       Will you show him, please?

21     (Tendered.)

22       THE DEFENDANT:  Yeah.

23       THE COURT:  Okay.  I need a copy of the signed plea

24  agreement.

25       MR. O'NEILL:  Yes, your Honor.

1          THE COURT:  Okay.

2          MR. O'NEILL:  I can tender that to the Court.

3          THE COURT:  Show the defendant the last page, page 34

4  of that agreement.

5          Is that your signature on page 34 of the agreement?

6          THE DEFENDANT:  Yes, it is, your Honor.

7          THE COURT:  Okay.  Thank you.

8          MR. O'NEILL:  Thank you.

9      (Tendered.)

10          MR. O'NEILL:  Thank you.

11          THE COURT:  Okay.  I think you can just take this to

12  file it.

13          THE CLERK:  Okay.

14          THE COURT:  Yes, you can.

15          Mr. Burlingame, have you seen this consent order of

16  forfeiture, sir?

17          MR. BURLINGAME:  I have, Judge.

18          THE COURT:  Okay.  And you've explained to your client

19  that pursuant to the plea agreement, it will be addressed -- I

20  mean entered.

21          MR. BURLINGAME:  Yes, your Honor.

22          THE COURT:  Okay.

23          MR. O'NEILL:  Yes, your Honor.  And for the record,

24  we, pursuant to this order, will be immediately moving to

25  forfeit the monies in the account listed in the forfeiture

1  order.

2       THE COURT:  Okay.  So, here, this is to enter on the

3  docket.

4       And then based upon those conditions -- now, you heard

5  me review them with your brother and your parents, but now I'm

6  going to review them with you because they're my court order,

7  okay?

8       So I'm going to release you.  And the basis for the

9  release is that there's certain conditions in place.

10      You're going to need to report for supervision to the

11 United States Pre-Trial Services Office, and that will depend

12 on how they direct you to do so, so that's one condition.

13      You cannot go get another passport or any other

14 international travel document.  Mr. Burlingame is going to hold

15 on to your passport for the purpose solely of traveling here to

16 court or to comply with the terms of your plea agreement, which

17 would be whatever cooperation agreement with the United States

18 Department of Justice Fraud Section.  So the passport will be

19 given to you for those travel, but that's only after you have

20 informed and given notice to the U.S. Pre-Trial Services

21 Office.  The -- otherwise, you are restricted from traveling

22 outside of the United Kingdom.

23      You are to avoid all contact, directly or indirectly,

24 with any person who is or may be a victim or a witness in the

25 investigation or prosecution.  No one is listed directly, but

1    that's -- you would know based upon the work that you have been
2    doing.
3              You are not allowed to possess a firearm, a
4    destructive device, or another weapon.
5              You're not allowed to excessively drink alcohol.
6    That's usually labeled here as something over a .08 blood
7    alcohol level.
8              You are not to use any or possess any narcotic drugs
9    or controlled substances unless a licensed medical practitioner
10   gives you those drugs.
11             You are to stay in the residence where you're living,
12   which will be with your parents, from 11:00 p.m. to 4:00 a.m.
13   each night.
14             And you shall comply with the terms of your plea
15   agreement, meaning, among other things, you shall also not
16   trade, directly or indirectly, any U.S. securities,
17   commodities, futures, or other financial instruments.
18             You have to report as soon as possible to the
19   Pre-Trial Services officer any contact you have with law
20   enforcement.  This, of course, will exclude your work with the
21   Department of Justice, but it includes even a traffic stop.  So
22   if any law enforcement officer arrests you, questions you, or
23   talks to you, you need to report it to the Pre-Trial Services
24   officer.
25             If you violate these conditions of bond, then, number

1    one, you could be placed in jail pending the resolution of your

2    sentence, or, number two -- and number two, the homes of both

3    your brother and your parents could be taken as part of the

4    secured bond.

5                Do you understand all of that?

6                THE DEFENDANT:  Yes, your Honor.

7                THE COURT:  Okay.  You are -- we have their signatures

8    declaring that they're not going to have any claims or liens on

9    the property.  You already cleared that.

10               MR. BURLINGAME:  Yes, your Honor.

11               THE COURT:  Okay.  All right.  So I will -- I will

12   enter that bond of $750,000 secured by the two properties with

13   those conditions.

14               Anything else from anyone else?

15               Here you go.

16               MR. O'NEILL:  Not from the government your Honor.

17               MR. BURLINGAME:  No, your Honor.

18               THE COURT:  All right.  Then I think what I'm going to

19   do is I'm going to set a status on the case, and I will, if you

20   want, waive his appearance since he'll be in the U.K., and that

21   status will be set for the purpose of just figuring out when we

22   are able to set a sentencing date and prepare a report.  And is

23   it realistic to set that status, say, in February?

24               MR. O'NEILL:  Yes, your Honor.

25               THE COURT:  All right.  Is that too far out?

1          MR. O'NEILL:  No, your Honor.

2          THE COURT:  Okay.  And that status is just for you

3    to -- I don't want you to fall between the cracks and not be

4    heard from.

5          MR. O'NEILL:  Understood, your Honor.  Thanks.

6          THE COURT:  So February 9th at 9:30 in the morning is

7    my criminal call.

8          MR. O'NEILL:  Yes, Judge.

9          THE COURT:  There's no exclusion because we are past

10   speedy trial.

11         Anything else?

12         MR. O'NEILL:  No, your Honor.

13         MR. BURLINGAME:  No, Judge.

14         THE COURT:  All right.  So the bond form says he can

15   be released after processing at the marshals, which is on 24.

16         MR. BURLINGAME:  Thank you very much, your Honor.

17         MR. O'NEILL:  Thank you, your Honor.

18         THE COURT:  Thank you.

19         THE CLERK:  All rise.  Court is adjourned.

20      (Proceedings concluded at 3:33 p.m.)

21

22

23

24

25

C E R T I F I C A T E

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter.


/s/ GAYLE A. McGUIGAN                          November 14, 2016
Gayle A. McGuigan, CSR, RMR, CRR                      Date
Official Court Reporter